# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                            )
                                            )
JOHN DUFFY,                                 )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )
                                            )
                                            )
ANDREW M. SAUL,                             )      Civil Action No.: 18-cv-12342-DJC
ACTING COMMISSIONER OF                      )
SOCIAL SECURITY ADMINISTRATION,             )
                                            )
                    Defendant.              )
                                            )
                                            )
_____)

## MEMORANDUM AND ORDER

CASPER, J.                                              February 21, 2020

## I.      Introduction

Plaintiff John Duffy ("Duffy") filed an application for supplemental security income

("SSI") with the Social Security Administration ("SSA") on August 3, 2016. R. 212.[1] Pursuant

to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Duffy

brought this action for judicial review of the final decision of Defendant Acting Commissioner[2]

of the SSA ("the Commissioner"), issued by the Appeals Council, denying Duffy's application for

SSI benefits on September 25, 2018. R. 1-7. Before the Court are Duffy's motion to reverse,

---

[1] "R." refers to citations to the Administrative Record, D. 10.

[2] Pursuant to Fed. R. Civ. P. 25(d), the Court has substituted Andrew M. Saul for the previous
Acting Commissioner, Nancy A. Berryhill, as Defendant in this suit.

D. 16, and the Commissioner's motion to affirm that decision, D. 17. In his motion, Duffy argues that the administrative law judge ("ALJ") erred in denying his claim because the ALJ's Residual Functional Capacity ("RFC") finding is internally inconsistent and does not represent a light work RFC and because the ALJ's credibility finding is not consistent with the record. D. 16 at 4, 11, 16. For the reasons discussed below, the Court DENIES Duffy's motion, D. 16, and ALLOWS the Commissioner's motion, D. 17.

## II.    Standard of Review

This Court has the power to affirm, modify, or reverse a decision of the Commissioner upon review of the pleadings and record. 42 U.S.C. § 405(g). Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)). Issues of credibility and inferences drawn from the facts on record are the responsibility of the Commissioner, who ultimately resolves conflicts in the evidence and determines the disability status of the claimant. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (citing Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The ALJ's findings of fact are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez, 647 F.2d at 222. As such, the Court must affirm the Commissioner's decision if it is supported by substantial evidence "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981).

### III.    Procedural Background

#### A.  <u>Prior SSA Claim</u>

Duffy stopped working on April 1, 2009.  R. 256.  Duffy previously worked as a glazier, metal fabricator and warehouse worker.  R. 70, 257.  Duffy filed a claim for SSI benefits with the SSA on June 25, 2013, alleging disability with an onset date of November 1, 2011.  R. 85.  His claim was denied upon initial review on September 26, 2013, and upon reconsideration on December 10, 2013.  <u>Id.</u>  On February 10, 2014, Duffy filed a timely request for a hearing before an ALJ and a hearing was held on October 15, 2014.  <u>Id.</u>  In a decision dated December 18, 2014, the ALJ found that Duffy did not have a disability within the definition of the Social Security Act and denied Duffy's claims.  R. 94.  The Appeals Council denied Duffy's request for review on March 10, 2016.  R. 121.  Duffy appealed the final decision of the Commissioner to this Court (Saris, D.J.), which denied Duffy's motion to reverse the decision of the Commissioner on August 7, 2017.  <u>Duffy v. Colvin</u>, 268 F. Supp. 3d 282, 291 (D. Mass. 2017).  Prior to that decision, however, Duffy reapplied for SSI alleging disability due to a neck injury and back problem, R. 223, which is the subject of this appeal.

#### B.      <u>Present SSA Claim</u>

Duffy filed this claim for SSI benefits with the SSA on August 3, 2016, alleging disability with an onset date of December 10, 2014,[3] R. 212, later amended to April 28, 2016.  <u>Id.</u>; R.38; R. 94.  His claim was initially denied on September 26, 2016, R. 22, and was denied upon reconsideration on December 6, 2016.  <u>Id.</u>  On December 20, 2016, Duffy filed a timely request for a hearing before an ALJ and a hearing was held on September 14, 2017.  <u>Id.</u>  The ALJ found

---

[3] The Request to Amend the onset date to April 28, 2016 indicated that the original onset date was December 19, 2014.  R. 249.

that Duffy did not have a disability within the definition of the Social Security Act and denied Duffy's claims.  R. 19-29.

Duffy filed a timely appeal of the ALJ's decision to the Appeals Council.  R. 4.  The Appeals Council modified some of the ALJ's findings and adopted the ALJ's decision as modified.  R. 4-7.  The Appeals Council's decision is the final decision of the Commissioner.  R. 1.  Duffy now seeks review from this Court.  D. 1.

## IV.  Discussion

### A.  Legal Standards

#### 1.  Entitlement to Supplemental Security Income

A claimant is entitled to SSI benefits if he has a qualified "disability."  42 U.S.C. § 423(a)(1)(E).  A "disability" is defined by the SSA as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The impairment must be sufficiently severe such that it renders the claimant unable to engage in any of their previous work or other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner must follow a five-step analysis to determine whether the claimant is disabled and, thus, whether the application for Social Security benefits should be approved.  20 C.F.R. § 416.920(a)(4).  The determination may be concluded at any step in the process.  Id. § 416.920(a)(4).  First, if the claimant is engaged in substantial gainful work activity, the application must be denied.  Id. § 416.920(a)(4)(i).  Second, if the claimant does not have, or has not had, within the relevant time period, a severe medically determinable impairment or

combination of impairments, the application must be denied.  Id. § 416.920(a)(4)(ii).  Third, if the impairment meets the conditions of one of the listed impairments in the Social Security regulations, the application must be approved.  Id. § 416.920(a)(4)(iii).  Fourth, if the impairment does not meet the conditions of one of the listed impairments, the Commissioner then determines the claimant's residual functional capacity ("RFC").  Id. § 416.920(a)(4)(iv).  If the claimant's RFC is such that they can still perform their past relevant work, their application for benefits will be denied.  Id.  Fifth, if the claimant is unable to perform any other occupations in significant numbers within the national economy based on their RFC, education, work experience and age, they are disabled under the SSA and their application must be approved.  Id. § 416.920(a)(4)(v).  It is the ALJ's burden at step five to show that there are a significant number of jobs in the national job market that the claimant can perform.  Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).

## B.  Before the Appeals Council

### 1.  Medical History

The ALJ considered evidence about Duffy's medical history including treatment, surgeries, assessments and diagnoses.  R. 24-29.  The Appeals Council relied upon the materials before the ALJ in addition to a letter from the University of Massachusetts Disability Evaluation Services that the ALJ did not address in the hearing decision.  See R. 4-5.

#### a.  Neck pain and back pain

Duffy has experienced neck pain since he was hit on his head and back with a baseball bat and pipe during an assault in 2008.  R. 521.  Duffy was diagnosed with "cervical radiculopathy . . . due to degenerative disk disease" and had surgery in September 2012.  R. 333-338.  In May 2014, an MRI scan taken at Tufts Medical Center ("Tufts") showed mild cord impingement at C3-4 and

C6-7, as well as decreasing bony edema at the C5-6 fusion and progressive narrowing of the right neural foramen at C6-7. R. 368-69. In July 2014, Duffy had a consultation with Neurological Consultants, Inc. for cervical pain. R. 485-86. In January 2015, Duffy was diagnosed by a physician at Tufts with pseudoarthrosis of C5-6 and C6-7 with foraminal narrowing and he had surgery. R. 406, 424. At a visit in March 2015, Duffy's physician noted that Duffy had not significantly improved and recommended physical therapy. R. 448.

An MRI in June 2015 found lumbar spondylosis and apparent "osseous anomalies involving the posterior elements of the L5 vertebral body." R. 399-400, 420. Duffy's physician recommended Lyrica and a pain consultation. R. 444. Duffy expressed pain from extension of his neck at a checkup in August 2015 and his physician recommended aquatherapy and "aggressive conservative therapy." R. 440. Duffy mentioned continued back pain and numbness in his forearm during a medical check-up in September 2015. R. 80. Further examination found evidence of an antalgic gait from lumbar spondylosis. R. 375. A CAT scan found congenital absence of the right lamina of L5 and bulky degenerative changes at L4-5 and L5-S1 resulting in severe and moderate spinal canal narrowing. R. 405. Duffy's physician again suggested physical therapy. R. 437.

An examination in March 2016 noted that Duffy still had back pain and his physician referred him to a pain clinic, noting that "[h]is lumbar MRI looks well without any obvious disc or pathology." R. 434. After he reported similar pain to a different physician at Tufts in May 2016 that physician administered a subacromial injection to address neck and shoulder pain. R. 459. A progress note from Brigham and Women's Hospital ("BWH") from May 2016 reported that Duffy had lower back pain with left foot drop associated with numbness of the anterolateral left thigh down to the knee. R. 503. Duffy was diagnosed with cervical canal stenosis, lumbar facetogenic pain, myofascial pain syndrome and cervicogenic headaches. R. 507.

Duffy was given left lumbar medial branch block injections in July 2016.  R. 514-16.  A progress note stated that he was given opioids, neuropathic medication and muscle relaxants but they were not helpful.  Id.  An MRI taken at BWH in August 2016 found evidence of "[m]oderate to severe multilevel degenerative changes most pronounced at C3-C4 and C4-C5, where there is at least moderate to severe central stenosis."  R. 478.  An examination at BWH in August 2016 found moderate to severe degenerative changes at C3-C4 and C4-C5.  R. 501.  An x-ray taken in September 2016 showed evidence of degenerative disc disease at C5-C6.  R. 520.  In October 2016, a progress note from BWH stated that there was "cord compression present."  R. 557.  Duffy had surgery on his spine in November 2016 at BWH.  R. 567.  Duffy underwent physical therapy in December 2016 at Bay State Physical Therapy.  R. 592-96.

At a follow up visit at BWH in February 2017, Duffy reported improved neck and shoulder pain but worsening lower back pain.  R. 624.  A neurological evaluation was conducted in June 2017 at Massachusetts General Hospital ("MGH") that showed degenerative disc and facet disease of the lumbar spine.  R. 630-31.  Duffy had a consultation at MGH regarding his lower back pain in September 2017.  R. 644.  An examination then showed moderate tenderness in his lower back and only trace knee and right ankle reflexes and no left ankle reflex.  Id.  The examining physician suggested a combination of lumbar corset and low dose NSAIDs, and he noted that Duffy could be a candidate for L45 spine fusion.  R. 645.

### 2.  ALJ Hearing

The ALJ heard testimony from Duffy and Amy Vercillo, a vocational expert ("VE"), at the hearing on September 14, 2017.  R. 22, 35-81.

a. <u>Duffy's Testimony</u>

Duffy testified that he has a high school education.  R. 42.  He lives with "a friend of [his] mostly" and, for a time, in his ex-wife's apartment with their two sons.  R. 43.  Duffy worked at Architectural Glazing Systems, then at Matson Glass as a glazier until he was laid off in 2009.  R. 44.  Duffy stated that he has not worked since he was laid off in 2009.  R. 45.  Duffy noted that he has not looked for work since 2014 because he "physically can't do it."  R. 46.

He testified that he had surgery on January 5, 2015 that relieved pain in his arm but left numbness in his left shoulder.  R. 48.  Duffy also noted that he has trouble bending over and experienced pain in his lower back.  R. 51.  Duffy was prescribed various medications for the pain and pressure in his back.  <u>Id.</u>  Duffy stated that he walks to the store once or twice a week and that he is unable to drive because his license was suspended, but that his daughter gives him rides.  R. 54-55.  Duffy testified that he can cook some meals, stating that he makes "[m]ostly sandwiches, throw a pizza in the oven, stuff like that" and that his oldest son cooks for him.  R. 56, 63.  Duffy indicated that he does not do yard work or take out the trash and that he has trouble washing his hair and putting on shoes and socks because these require raising his arms or bending over.  R. 56-57, 67.

Duffy testified that he exercises by walking approximately fifteen minutes to the store and carries groceries back, but that he can only carry about ten to fifteen pounds comfortably and sometimes must stop and take a break.  R. 58.  He noted that he would likely be able to lift less than ten to fifteen pounds if he was lifting it on a repeated basis.  <u>Id.</u>  Duffy also stated that the pressure in his back and neck builds up when he bends over.  R. 58-59.  He testified that the pain from his shoulder was gone after his surgery but that his shoulder is numb and he still has pressure in his neck.  R. 60.  Duffy stated that he has limited movement in his neck when moving his head

up and down.  R. 61.  He provided that he does not go on vacations but did go to a Patriot's team

practice where he laid on the lawn for ninety percent of the time.  R. 59, 62.  Duffy struggles with

getting up and lying down in repetition and watches his grandchild play but does not play on the

floor with him or babysit him.  R. 64-65.  When  he visits friends they usually "just hang out and

watch TV" and he is most comfortable in a reclining position.  R. 66.

### b.  VE Testimony

The VE testified that Duffy had previously worked as a glazier, which is classified as a

medium, skilled occupation with a Specific Vocational Preparation ("SVP")[4] rating of 7.  R. 71.

She stated that Duffy had previously worked as a metal fabricator, which is classified as heavy,

skilled and an SVP of 7.  R. 71.  She provided that his other previous occupations of forklift

operator and warehouse worker were classified as medium, semi-skilled and an SVP of 3.  R. 71.

The VE also noted that there are no readily transferrable skills from Duffy's past work.  Id.  The

ALJ presented the VE with a hypothetical in which a person of the same age, education, language,

and work background as Duffy:

> would be able to lift and carry 20 pounds occasionally and 10 pounds on a frequent
> basis.  This person would be able to sit for six hours out of an eight-hour work day
> and would be able to stand and/or walk for three hours out of an eight-hour work
> day.  This person would occasionally be able to climb stairs and ramps; never ropes,
> ladders, and scaffolds; would occasionally be able to balance, stoop, crouch, kneel,
> and crawl.  This person would only occasionally be able to reach vertically with the
> bilateral upper extremities and would only occasionally be able to push and pull
> with the left upper extremity.  This person would have to avoid concentrated
> exposure to unprotected heights and dangerous machinery.

R. 72.  The VE testified that a person with this hypothetical RFC would not be able to perform any

of Duffy's past relevant work.  Id.  The VE offered production inspector, machine tender and

---

[4] The SVP rating is used as a guideline "for determining how long it would take a claimant to
achieve average performance in a job."  POMS § DI 25001.001(A)(77).

production labeler as three occupations that a person with this RFC could perform. R. 73. The VE later clarified that Duffy wouldn't qualify for a position as a machine tender because this position required a lot of standing. R. 74-75. The VE instead offered a third occupation of "bench packer, sorter." R. 75. When asked by Duffy's attorney whether a person with the hypothetical RFC could only sit and stand every twenty minutes would still be able to do this work, R. 73, the VE responded that the positions of bench packer sorter, production inspector and production labeler would be available with this additional limitation. R. 74.

### 3. Findings of the ALJ

Following the required five-step process, the ALJ found at step one of the analysis that Duffy had not engaged in substantial gainful work activity during the relevant period. R. 24. At step two, the ALJ concluded that Duffy had the following severe impairments: status post cervical spine surgeries and lumbar spine degenerative changes. Id. At step three, the ALJ determined that Duffy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments that require approval of benefits. Id. (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). At step four, the ALJ found Duffy had an RFC to:

> perform light work . . . except he: can stand/walk for 3 hours; occasionally reach vertically with his arms; occasionally push and pull with his left arm; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and must avoid climbing ladders/ropes/scaffolds; and must avoid concentrated exposure to unprotected heights and dangerous machinery.

R. 25 (internal citation omitted).

The ALJ considered Duffy's neck and left arm impairments and noted that Duffy reported "significant difficulty with lifting, reaching, using his hands, sitting, standing, walking, bending, kneeling, squatting, and climbing stairs, as well as with performing personal care and daily tasks." Id. (internal citation omitted). The ALJ also noted that Duffy had testified to having neck pain,

back pain and ongoing numbness in his left arm. Id. The ALJ, however, found that, although Duffy's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible where they were not entirely consistent with the other evidence, including medical evidence, in the record. R. 26. Based upon the RFC assessment and the VE's testimony, the ALJ concluded that Duffy could not perform his past work as a glazier, metal fabricator or forklift warehouse worker. R. 28. At step five, the ALJ found that Duffy was able to perform several jobs that exist in significant numbers in the national economy, such as production inspector, machine tender and production labeler. R. 29. Accordingly, the ALJ concluded that Duffy was not disabled and, therefore, was not eligible for SSI. Id.

### 4. Findings of the Appeals Council

The Appeals Council affirmed the ALJ's findings at steps one through five. R. 4. The Appeals Council, however, disagreed with the ALJ's failure to consider Duffy's obesity and left shoulder degenerative changes as medically determinable impairments. R. 5. The Appeals Council noted, however, that the ALJ's RFC finding took into account these impairments. Id. The Appeals Council also disagreed with the ALJ's lack of consideration of a letter from the University of Massachusetts Disability Evaluation Services that indicated that Duffy was found to have a disability that was expected to last through November 17, 2017. Id. The Appeals Council did not give the determination in the letter any weight because the letter did not identify any diagnoses or functional limitations. Id. The Appeals Council disagreed with the ALJ's finding that an individual with Duffy's RFC could perform the occupation of machine tender, but adopted the VE's representative occupation of bench packer sorter, instead of machine tender, along with the occupations of production inspector and production labeler. R. 6. Accordingly, the Appeals

Council adopted the ALJ's conclusion at each step and affirmed his conclusion that Duffy was not disabled.  R. 6-7.

### C.  <u>Duffy's Challenges to the Appeals Council's Findings</u>

Duffy contends that the Appeals Council erred in affirming the ALJ's light work RFC finding, which he claims is not consistent with agency guidelines.  D. 16 at 11.  Duffy further contends that the Appeals Council erroneously affirmed the ALJ's credibility finding.  <u>Id.</u> at 16.

#### 1.  *The Light Work RFC*

Duffy alleges that the ALJ's light work RFC finding was internally inconsistent.  <u>Id.</u> at 11. He argues that an RFC that includes standing and walking for approximately three hours and sitting for six hours in an eight-hour workday should be characterized as sedentary rather than light work. <u>Id.</u>  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing."  20 C.F.R. § 404.1567(b).  "Frequent" is defined as "occurring from one-third to two thirds of the time."  SSR 83-10, 1983 WL 31251, at *6.  Sedentary work, on the other hand, "involves lifting no more than 10 pounds at a time" and "a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

The ALJ is responsible for deciding the claimant's RFC during the hearing stage.  <u>Kiklis v. Astrue</u>, No. 10-cv-10699-NMG, 2011 WL 4768491, at *9 (D. Mass. Sept. 28, 2011) (citing 20 C.F.R. § 404.1546(b)).  After determining a claimant's RFC, the ALJ must turn to the applicable grid, which shows a claimant's vocational profile including age, education, and whether the claimant's prior work experience was unskilled, skilled or semiskilled and whether, if the past work is skilled or semiskilled, the skills are transferrable to other occupations.  20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(a); <u>see</u> <u>Foxworth v. Colvin</u>, 249 F. Supp. 3d 585, 587 (D. Mass.

2017).  The regulations direct that the ALJ use Table No. 1 for a sedentary RFC and Table No. 2 for a light work RFC.  Id. § 201.00, 202.00.  However, "if an individual's specific profile is not listed within [the tables], a conclusion of disabled or not disabled is not directed."  Id. § 200.00(d).  If, therefore, a claimant cannot perform all the exertional requirements of work at a certain level, as is the case for Duffy, the ALJ is directed to use the rules as a framework when determining whether the claimant is disabled.  Id.; R. 29 (stating that, "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14").

Duffy alleges that his RFC should be classified as a sedentary RFC rather than a light work RFC because he is unable to meet the full range required of a light work RFC due to his limitation to three hours of walking and standing during an eight-hour workday.  D. 16 at 13.  A claimant, however, is not required to be able to perform the full range of light work to have a light work RFC.  Spalke v. Berryhill, No. 16-cv-10856-TSH, 2016 WL 10720160, at *10 (D. Mass. May 10, 2016) (noting that a light work RFC with limitations could apply where a claimant could not perform "a full range of light work").  A claimant who is limited to a smaller range of light work could still have an RFC classified as light.  Ambrose v. Colvin, No. 3:14-CV-1618, 2015 WL 877790, at *14-15 (M.D. Pa. Mar. 2, 2015) (finding that the claimant was able to perform a limited range of light work despite being restricted to standing and walking for one-third of an eight-hour work day).  Having a light work RFC with additional limitations, therefore, does not require that Duffy be limited to sedentary work.

According to Duffy, the ALJ is directed to apply the sedentary Medical-Vocational grid rules where a claimant is limited to even as much as four hours of standing and walking.  D. 16 at 13. Duffy bases this assertion on the Program Operations Manual System ("POMS"), which serves

as the SSA's interpretation of relevant regulations for Social Security benefits. See Coleman v. Berryhill, No. 4:16-cv-1546-SNLJ, 2017 WL 6407476, at *7 (E.D. Miss. Dec. 15, 2017) (noting that POMS is an agency interpretation of regulations and is controlling where it is not inconsistent with the regulation or plainly erroneous). The manual includes a borderline age policy that states that, "[i]f a claimant is within a few days to a few months of reaching a higher age category and using the chronological age results in a denial, consider using the higher age category if it results in a favorable determination, after you evaluate all factors ([RFC)], age, education, and work experience) of the claim." POMS § DI 25015.006(A) (emphasis in original).

Duffy points to Section E of the borderline age policy, which offers examples of how it may be applied. D. 16 at 13; POMS § DI 25015.006(E). Duffy uses this section of the manual to argue that "limiting a claimant to four hours of standing and/or walking erodes the occupational base[5] for light work so significantly that a sedentary rule should be used as a framework for the disability determination." D. 16 at 13. According to Duffy, this section directs the ALJ to apply a sedentary rule because he is limited to three hours of standing and walking. Id. at 14. The borderline age policy, however, is inapplicable here because Duffy was not within a few days to a few months of a higher age category when the ALJ made his decision.

Duffy further argues that, if the Court does not find that he should be characterized as having a sedentary RFC, that his RFC falls between light and sedentary work and he should be found to have a significantly reduced exertional capability—the capability to perform exertional activities including sitting, standing, walking, lifting, carrying, pushing and pulling—which would warrant a finding of disability. D. 16 at 14; SSA 83-10, 1983 WL 31251, at *5. Duffy relies upon

---

[5] Occupational base is defined as "[t]he number of occupations as represented by RFC that an individual is capable of performing." SSA 83-10, 1983 WL 31251, at *7.

POMS § DI 25025.015(D), which explains how the ALJ must make a disability finding where the claimant's exertional capacity falls between grid rules with different conclusions. D. 16 at 14. Duffy argues that, under this section, the ALJ was required to apply the grid rule that directed a finding of disability. D. 16 at 14. Duffy further argues that, where a claimant's exertional capacity falls between two grid rules and the rules direct opposite conclusions, the ALJ must apply the grid rule directing a finding of no disability where the claimant has "a slightly reduced capacity for the higher level of exertion," or the grid rule directing a finding of disability where the claimant has "a significantly reduced capacity for the higher level or exertion." Id. (quoting POMS § DI 25025.015(D)).

This section of POMS, however, does not address every possible situation when a claimant's capacity falls between rules. See Esping v. Berryhill, No. 17-872 FLN, 2018 WL 3383433, at *7 (D. Minn. July 11, 2018). The regulations offer more guidance for the ALJ when a claimant's RFC falls between light and sedentary work by stating that there may be a slight reduction in the exertional level, a significant reduction in the exertional level or an exertional capacity that falls in the middle of the ranges. SSR 83-12, 1983 WL 31253, at *2-3. POMS § DI 25025.015(D) does not provide guidance where a claimant's RFC falls somewhere in the middle of the ranges. See Sankhar v. Colvin, No. 03:14-cv-01644-HZ, 2015 WL 5664285, at *7 (D. Or. Sept. 21, 2015) (finding that the ALJ did not err in applying POMS § DI 25025.015 because she consulted a VE when the claimant's RFC placed him in the middle of two levels of exertion). When a case falls in the middle of the ranges, the regulations advise that a vocational expert be called to determine the extent of the impact on the occupational base to aid the ALJ in assessing whether the claimant should be found disabled. SSR 83-12, 1983 WL 31253, at *3; Esping, 2018 WL 3383433, at *7.

The ALJ relied upon the VE to determine the extent to which Duffy's limitations eroded the unskilled light occupational base. R. 29. Duffy contends that the ALJ erred in this reliance and that the ALJ should have applied grid rule 201.14, which would apply a sedentary RFC. D. 16 at 15. Duffy's exertional capacity, however, falls somewhere in the middle of light and sedentary work because he can perform the lifting requirements of light work but is restricted to three hours of standing and walking, which is below what is normally required for light work but above what is required of sedentary work. SSR 83-10, 1983 WL 31251, at *5-6; R. 28-29; see Sankhar, 2015 WL 5664285, at *7 (explaining that, if slightly reduced, the ALJ would apply a light work RFC and, if significantly reduced, would apply a sedentary RFC). Because Duffy's exertional capacity falls in the middle of light and sedentary, the ALJ correctly consulted a VE to determine Duffy's remaining occupational base for his reduced light work RFC.

Contrary to Duffy's argument otherwise, D. 16 at 15, the ALJ did not apply one grid rule over another and instead properly used the rule as a framework, which was supplemented by the VE's testimony, to determine the effect of Duffy's limitations on the occupational base. R. 29; see Gonzalez v. Comm'r of Soc. Sec., No. 00-1251, 2000 WL 1502864, at *1 (1st Cir. Oct. 5, 2000). Furthermore, the "regulations and case law require nothing more" than a list of representative occupations that the claimant could perform, as well as an explanation that the claimant is not capable of a full range of light work and an explanation that the ALJ relied on VE testimony to determine that a significant number of jobs exist in the national market. Pittard v. Berryhill, No. 2-17-cv-71, 2018 WL 4677831, at *12 (E.D. Va. June 8, 2018) (denying a motion to remand to require the ALJ to explain the decision further). The ALJ explained that he found that Duffy was not disabled because Duffy's RFC fell between sedentary and light. R. 29. Furthermore, the ALJ offered three representative occupations that Duffy could perform, although

the position of machine tender was replaced with bench packer sorter by the Appeals Council.  Id.; R. 6.  The ALJ's finding was based on substantial evidence and, therefore, there was no error.

## 2.  *The ALJ's Credibility Finding*

Duffy alleges that the ALJ erred when he found that Duffy's subjective statements regarding pain were not credible.  D. 16 at 16.  "So long as statements of a claimant or his doctor are not inconsistent with the objective findings, they could, if found credible by the adjudicator, permit a finding of disability where the medical findings alone would not."  Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986).  "[A]n administrative law judge must consider a claimant's subjective allegations of pain and functional limitations, although he is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living."  Cotley v. Astrue, No. 10-cv-30085-KPN, 2011 WL 2149265, at *4 (D. Mass. May 31, 2011) (citing 20 C.F.R. §§ 404.1529, 416,929; Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987); Avery, 797 F.2d at 22-23; Winn v. Heckler, 762 F.2d 180, 181 (1st Cir. 1985)).

The Court must give deference to the credibility finding of the ALJ.  Amaral v. Comm'r of Soc. Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (citing Frustaglia, 829 F.2d at 195 (stating that "[w]here a hearing officer observes and evaluates a claimant, and makes specific findings, his credibility finding is entitled to deference.")).  Testimony may be accepted insofar as it is "reasonably consistent with the objective medical evidence."  Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010); see 20 C.F.R. § 404.1529(c)(4).  "[T]here must be a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged."  Avery, 797 F.2d at 21.

To find that a claimant is not credible, the finding "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant." Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (citing Benko v. Schweiker, 551 F. Supp. 698, 704 (D.N.H. 1982)); see Coggon v. Barnhart, 354 F. Supp. 2d 40, 56 (D. Mass. 2005). The ALJ must consider the following factors enumerated in Avery when making this determination: "1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g. movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities." Avery, 797 F.2d at 29.

Duffy alleges that the ALJ only discussed Duffy's daily activities and, therefore, did not satisfy the requirements set forth in Avery. D. 16 at 17. Although the ALJ must consider all the Avery factors, Bazile v. Apfel, 113 F. Supp. 2d 181, 188 (D. Mass. 2000), the ALJ is not required to expressly discuss every Avery factor in his decision. Lill v. Astrue, 812 F. Supp. 2d 95, 103 (D. Mass. 2011) (citing Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 330 (1st Cir. 1990)). Furthermore, "an ALJ complies with Avery if he explores the factors at the administrative hearing." King v. Comm'r of Soc. Sec., No. 11-cv-11709-RBC, 2013 WL 1331209, at *8 (D. Mass. Mar. 28, 2013) (quoting Graham v. Barnhart, No. 02-CV-243-PB, 2006 WL 1236837, at *8 (D.N.H. May 9, 2006)); see Patilla v. Shalala, No. 93-2288, 1994 WL 140416, at *2 (1st Cir. Apr. 15, 1994) (upholding a district court's finding that a hearing officer had complied with Avery through questioning during the hearing and through substantial evidentiary support of his credibility determination).

Here, although the ALJ did not expressly address all of the Avery factors in his decision, the ALJ considered the Avery factors in making his credibility determination. To satisfy the first factor, the ALJ noted in his decision that Duffy "alleges being disabled since 2016" with "ongoing neck pain going down his left arm with numbness and back pain going down his leg." R. 26. The ALJ discussed that "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence." Id. The ALJ then discussed Duffy's treatment history, noting that "claimant reports of ongoing back pain and weakness. Physical examination, however, showed only moderate tenderness, only some discomfort with range of motion and straight-leg raise, and otherwise intact strength and sensation in both legs." Id.; see Hejazi v. Colvin, No. 13-cv-11129-DPW, 2014 WL 3513398, at *12 (D. Mass. July 11, 2014) (an ALJ's credibility determination was supported by substantial evidence where the ALJ considered medical reports that indicated the claimant was responding well to treatment and medication was effective). Furthermore, the ALJ asked Duffy about his pain during the hearing. R. 48-53, 60-61.

The ALJ considered the second Avery factor during the hearing when he heard testimony from Duffy regarding the precipitating and aggregating factors of bending over, raising his arms above his head and repeatedly standing up and lying down. R. 64, 67. In discussing the type, dosage, effectiveness and adverse side effects of any pain medication that Duffy was prescribed, the ALJ noted in his decision that "the treatment plan is to continue with conservative treatment for the time being, bracing, medications, and so forth." R. 26. The ALJ also asked Duffy about his medications during the hearing. R. 52. Duffy testified that in the past he had taken "Lyrica, Topamax, tramadol, [and] gabapentin." R. 51. Duffy further testified that he was not currently

taking any medication, but that he had been going to a pain clinic and they had been giving him Topamax, which was not effective.  R. 52.

In addressing the fourth <u>Avery</u> factor, the ALJ discussed the surgeries and treatment plans that Duffy underwent, including physical therapy, as well as the effectiveness of these treatments. R. 26-27.  The ALJ discussed Duffy's functional restrictions, noting "slightly decreased 8/10 left arm strength," that a "physical examination revealed intact 5/5 arm strength and steady gait," "8/10 left grip" and "only some discomfort with range of motion and straight-leg raise."  <u>Id.</u>  The ALJ also noted that Duffy "reports significant difficulty with lifting, reaching, using his hands, sitting, standing, walking, bending, kneeling, squatting, and climbing stairs, as well as with performing personal care and daily tasks."  R. 25.  Finally, it is apparent that the ALJ considered the sixth <u>Avery</u> factor when he discussed that Duffy "testified to preparing meals, washing dishes, playing with his children, and going shopping[,] walking to the store and carrying groceries back."  R. 27.

Duffy also argues that the ALJ erred by relying on evidence of Duffy's daily activities to show that he is capable of working because Duffy testified to limitations on daily activities and to requiring assistance.  D. 16 at 17-18.  Testimony, however, that family members assisted with household work and that a claimant required frequent breaks does not prevent an ALJ from considering testimony about the claimant's daily activities in assessing his credibility.  <u>See</u> <u>Teixeira</u>, 755 F. Supp. 2d at 347; <u>see also</u> <u>Rogers v. Barnhart</u>, 204 F. Supp. 2d 885, 894 (W.D.N.C. 2002).  In <u>Rogers</u>, the ALJ had noted that "the record did not show any frequent, radicular, severely intense pain of a disabling degree."  <u>Rogers</u>, 204 F. Supp. 2d at 894.  In this case, the ALJ discussed at length how evidence in the record of improvements in Duffy's condition and his ability to perform certain activities contradicted Duffy's allegations of disabling pain.  R. 25-27.  There was

no error as the ALJ considered the <u>Avery</u> factors and his findings were supported by substantial evidence.

## V.      Conclusion

Based on the foregoing, the Commissioner's motion to affirm, D. 17, is ALLOWED and Duffy's motion to reverse, D. 16, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
